IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SANDRA HINES
(natural mother and legal guardian of
K.S.),

    Plaintiff,

      v.

FELICIA JEFFERSON
(Individual Capacity), et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:17-CV-3263-TWT

## OPINION AND ORDER

This is a civil rights action. It is before the Court on the Defendant Felicia

Jefferson's Motion for Summary Judgment [Doc. 48] and the Defendant Newton

County School District's Motion for Summary Judgment [Doc. 56]. For the

reasons set forth below, the Defendant Felicia Jefferson's Motion for Summary

Judgment [Doc. 48] is GRANTED and the Defendant Newton County School

District's Motion for Summary Judgment [Doc. 56] is GRANTED.

## I. Background

This case arises out of a fight between two female students at Newton

High School. The Plaintiff Sandra Hines is the mother and legal guardian of

K.S. On August 29, 2016, K.S. arrived at school and waited in the common area,

a large open space outside of the administrative offices where students gather

in the morning before school starts.[1] While K.S. was standing in the common area, D.B., another student, asked K.S. if she wanted to fight.[2] K.S. said no, but D.B. punched K.S. in the face anyway.[3] K.S. then hit D.B. in the face.[4] A crowd of students began to form around K.S. and D.B.[5] A circle of students such as this normally indicates to school officials that a fight is occurring.[6] The two girls continued to fight, and they fell to the floor after K.S. grabbed D.B.[7] Amanda Tolbert, a teacher at the school, and Edgar Gousse, a coach at the school, attempted to separate the students and end the fight.[8] Someone eventually pulled D.B. off of K.S., as another person held K.S. on the floor by her legs.[9] At the time, K.S. was unaware of who had intervened in the fight.

---

[1] Def. Jefferson's Statement of Material Facts ¶¶ 1-2.

[2] *Id.* ¶ 3.

[3] *Id.*

[4] *Id.*

[5] *Id.* ¶ 5.

[6] *Id.*

[7] *Id.* ¶ 7.

[8] *Id.* ¶ 8. Jefferson erroneously labeled two factual statements as Paragraph 7 in her Statement of Material Facts. Hines renumbered these factual statements in her Response to Jefferson's Statement of Material Facts to account for this error. For clarity's sake, the Court will refer to Jefferson's Statement of Material Facts as Jefferson originally numbered them, and will differentiate between the correct Paragraph 7 and erroneous Paragraph 7 statements as necessary.

[9] *Id.*

Deputy Felicia Jefferson is a Sheriff's Deputy for the Newton Sheriff's Office.[10] She works as a School Resource Officer at Newton High School. On the morning of the fight, Jefferson noticed that a large crowd had formed, indicating that a fight was most likely taking place.[11] Jefferson moved through the crowd, and saw that Deputy Lee Smith had already reached the fighting students.[12] As Jefferson approached, Deputy Smith was already on the floor holding D.B., and Coach Gousse was attempting to hold K.S. on the floor.[13] Jefferson approached K.S. after Deputy Smith grabbed D.B.[14] According to Jefferson, K.S. was struggling with Coach Gousse, and Jefferson told Gousse that he could let go of K.S. and let her handle the situation from there.[15] Gousse let go of K.S., but K.S. continued to struggle with Jefferson.[16] K.S. contends that she was initially not aware that the person holding her was Jefferson.[17] The parties dispute what happened next. According to K.S., Jefferson "scooped" her up and held her by the

---

[10]     *Id.* ¶ 13.

[11]     Jefferson Decl. ¶ 5.

[12]     *Id.* ¶ 6.

[13]     *Id.*

[14]     Def. Jefferson's Statement of Material Facts ¶ 14.

[15]     *Id.* ¶ 17.

[16]     *Id.* ¶¶ 18-20.

[17]     Pl.'s Amended Statement of Additional Facts as to Def. Jefferson [Doc. 58-1] ¶ 46.

neck.[18] K.S. claims that Jefferson picked her up off the floor by her neck and held her in a choke hold, in a manner such that her feet were in the air.[19] Then, according to K.S., Jefferson carried her to the school office by her neck, with her feet still off the floor the entire way.[20] K.S. testified that she could not breathe because of this. Jefferson disputes this account of the facts, and contends that she stood behind K.S., put her arms around K.S.'s upper arms and chest area, embraced her body, and walked her down the hall.[21] Jefferson contends that this was necessary because K.S. refused to walk on her own and continued to fight back.[22] According to Jefferson, she walked behind K.S. and escorted her to the school office.[23] In her deposition, K.S. admits that she was resisting and trying to get "loose" during this walk.[24] In total, it took Jefferson and K.S. approximately two minutes to walk from the common area to the office.[25] K.S. struggled

---

[18]     Def. Jefferson's Statement of Material Facts ¶ 22.

[19]     Pl.'s Amended Statement of Additional Facts as to Def. Jefferson ¶¶ 47-48, 50.

[20]     *Id.* ¶ 51.

[21]     Def. Jefferson's Statement of Material Facts ¶ 24.

[22]     *Id.* ¶ 25.

[23]     *Id.* ¶ 26.

[24]     *Id.* ¶ 34. K.S. argues that she was resisting because she could not breathe. Pl.'s Amended Statement of Additional Facts as to Def. Jefferson ¶ 34.

[25]     Def. Jefferson's Statement of Material Facts ¶ 35.

the entire time.[26] Once they made it to the office, Jefferson let go of K.S., who then sat in a chair.[27] Jefferson never handcuffed K.S.[28] Later that day, Hines took K.S. to see a doctor because K.S. complained of pain in her neck.[29] K.S. told the doctor that she had a decreased range of motion in her neck, and the doctor instructed K.S. to wear a neck brace for a couple of weeks.[30] The doctor's examination showed that K.S. had no cough or dyspnea, and that her lungs were functioning normally.[31] K.S. stopped wearing the neck brace in September 2016.[32]

Jefferson charged K.S. with Obstruction of an Officer and Disorderly Conduct.[33] The District Attorney later dismissed these charges, acknowledging that, although there was sufficient probable cause for these charges, the State would be unlikely to prove its case beyond a reasonable doubt.[34] On June 7,

---

[26]     *Id.* ¶ 36. Once again, K.S. does not dispute that she was struggling with Jefferson, but instead argues that she was resisting because she could not breathe. Pl.'s Amended Statement of Additional Facts as to Def. Jefferson ¶ 36.

[27]     Def. Jefferson's Statement of Material Facts ¶ 40.

[28]     *Id.* ¶ 41.

[29]     *Id.* ¶¶ 42-43.

[30]     *Id.* ¶¶ 46-47.

[31]     *Id.* ¶ 45.

[32]     *Id.* ¶ 48.

[33]     Jefferson Decl., Ex. 2.

[34]     [Doc. 52] at 7.

2017, Hines filed this action in the Magistrate Court of Newton County. The Defendants then removed to this Court. On behalf of her minor child K.S., Hines asserts claims under 42 U.S.C. § 1983 for excessive force and malicious prosecution against Jefferson. Hines also asserts a civil rights claim against the Newton County School District (the "School District"). The Defendants now move for summary judgment.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[35] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[36] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[37] The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[38] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury

---

[35] FED. R. CIV. P. 56(a).

[36] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[37] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[38] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

could reasonably find for that party."[39]

## III. Discussion

### A. Defendant Felicia Jefferson

First, Jefferson moves for summary judgment. She argues that Hines's excessive force claim fails on the merits, that Hines's malicious prosecution claim fails on the merits, and finally that she is entitled to qualified immunity on both of these claims. The Court agrees that Jefferson is entitled to summary judgment as to each of these arguments.

### 1. Excessive Force

First, Jefferson moves for summary judgment as to Hines's excessive force claim. She argues that the excessive force claim fails on the merits, and that she is entitled to qualified immunity. "The Fourth Amendment's guarantee against unreasonable searches and seizures includes the right to be free from the use of excessive force in the course of an arrest."[40] This analysis is governed by an objective reasonableness standard. "In order to determine whether the amount of force used by a police officer was proper, a court must ask 'whether a reasonable officer would believe that this level of force is necessary in the situation at hand.'"[41] "The Supreme Court has held that '[d]etermining whether

---

[39]    *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

[40]    *Saunders v. Duke*, 766 F.3d 1262, 1266-67 (11th Cir. 2014).

[41]    *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1186 (11th Cir. 2001)).

the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake.'"[42] Fourth Amendment jurisprudence recognizes that an officer's right to make an arrest or investigatory stop necessarily comes with the right to use some physical coercion or threat of force to effect the arrest.[43]

In order to balance the necessity of using some force to make an arrest against the arrestee's constitutional rights, the Supreme Court has established that courts should balance a number of factors.[44] These factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[45] "[T]he force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight."[46] However, because this is a test of reasonableness, it is

---

[42]     *Lee*, 284 F.3d at 1197 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

[43]     *Graham*, 490 U.S. at 396; *Lee*, 284 F.3d at 1197.

[44]     *Id.*

[45]     *Graham*, 490 U.S. at 396.

[46]     *Lee*, 284 F.3d at 1198.

not "capable of precise definition or mechanical application." The reasonableness of a particular officer's use of force "must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"[47] The essential question at the summary judgment stage is "whether, under the plaintiff's version of the facts, the officer behaved reasonably in the light of the circumstances before him."[48] Jefferson argues that her actions were objectively reasonable because she applied *de minimis* force.[49] Hines responds that no reasonable officer would have believed that it was necessary to apply a choke hold to K.S. in this situation because K.S. did not present a risk of danger to others, and that Jefferson's actions were so extreme that they resulted in injuries to K.S.'s neck and caused changes in K.S.'s behavior.[50]

Construing all factual inferences in Hines's favor, the Court concludes that Jefferson's use of force was objectively reasonable and thus did not violate the Fourth Amendment. Jefferson initially approached K.S. to intervene in the fight and resolve the situation. K.S. disobeyed Jefferson's commands and actively resisted Jefferson's efforts to move K.S. to the school office and calm her

---

[47]     *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

[48]     *Stephens v. DeGiovanni*, 852 F.3d 1298, 1315 (11th Cir. 2017) (internal quotations and alterations omitted).

[49]     Def. Jefferson's Mot. for Summ. J., at 14-18.

[50]     Pl.'s Br. in Opp'n to Def. Jefferson's Mot. for Summ. J., at 4-5.

down. K.S. admits that she was "moving [her] feet," "trying to get [Jefferson] off of [her]," "trying to get loose" and "squirming, wiggling, twisting, [and] turning."[51] K.S. also was not handcuffed as she resisted Jefferson's grasp.[52] During this struggle, Jefferson told K.S. that she was resisting arrest.[53] Given this, it was reasonable for Jefferson to believe that K.S. would continue to resist and fight back, and that force would be necessary to remove K.S. from the common area.[54] Even if K.S. may not have presented an obvious threat to others, K.S. had recently been engaged in a physical altercation with another student, and was actively struggling with Jefferson as she remained unhandcuffed. Moreover, the force that Jefferson applied to K.S., a two minute choke hold, was not disproportionate to this need for force.[55] Jefferson used this force to remove K.S. from the common area, and stopped using it as soon as she and K.S. arrived

---

[51]   K.S. Dep. at 62-63.

[52]   Def. Jefferson's Statement of Material Facts ¶ 41.

[53]   K.S. Dep. at 62.

[54]   *See J.B. ex rel. Brown v. Amerson*, 519 F. App'x 613, 619 (11th Cir. 2013) ("J.B. asserts that Amerson's application of force was unreasonable under the circumstances because, at the moment that Amerson grabbed J.B., J.B. posed no obvious threat to Amerson or others. But when we consider the totality of the circumstances, i.e., J.B.'s undisputed lack of respect for the jail officers, his threats to them, and his demonstrated willingness to lash out at the them, we can safely say that it was reasonable for Amerson to believe that J.B. turned away and 'hocked' with the intent to spit at Amerson.").

[55]   *See id.* ("Furthermore, the nature and duration of the force that Amerson applied to J.B. (a 19–20 second choke hold) was not disproportionate to the perceived need for force, and as the district court thoroughly explained in its analysis, the injury inflicted upon J.B. was minimal.").

at the office. Thus, she only applied physical force for as long as was necessary to separate K.S. from the crowd of students and de-escalate the situation. Finally, the injuries that K.S. experienced were minimal. Given these factors, Jefferson's actions were objectively reasonable. A reasonable officer confronted with these facts in real time would consider the use of force to be appropriate.

In similar situations, courts have found that the use of force against a disorderly and combative student by a School Resource Officer to be objectively reasonable. Those courts found the fact that a student was unhandcuffed and actively resisting the officer to be important in determining whether that officer's use of force was objectively reasonable. For example, in *J.W. v. Birmingham Board of Education*, the U.S. District Court for the Northern District of Alabama held that a School Resource Officer's use of an incapacitating chemical spray on a student who resisted the officer by pulling away from him did not constitute excessive force in violation of the Fourth Amendment.[56] This was true even though it was "unlikely" that the student "actually posed a risk" due to the difference in size between the student and the school official. Similarly, since K.S. was unhandcuffed and actively resisting Jefferson and Coach Gousse, Jefferson's use of force was objectively reasonable, even if K.S.

---

[56] *J.W. v. Birmingham Bd. of Educ.*, 143 F. Supp. 3d 1118, 1148 (N.D. Ala. 2015) ("Nonetheless, B.D. resisted Officer Henderson by pulling away from him and actively attempted to charge at Principal Burrell who, albeit, was out of harm's way. However, B.D.'s conduct is an act that in this circuit justifies the use of chemical spray.").

did not pose an obvious risk of danger to Jefferson or the other students.[57]

Moreover, the Court agrees with Jefferson that she employed *de minimis* force which, as a matter of law, does not constitute excessive force. The Eleventh Circuit has noted that "the application of de minimis force during an arrest does not, as a matter of law, constitute excessive force."[58] In a range of cases, the Eleventh Circuit "has held that a variety of physical force techniques used by police on unhandcuffed individuals constituted de minimis force that does not rise to excessive force that could violate the Fourth Amendment," while in contrast the use of gratuitous force on an already-handcuffed and compliant detainee constitutes excessive force.[59] In *Gomez v. United States*, the Eleventh Circuit concluded that an officer's actions, including grabbing the plaintiff by the neck, choking him, and then slamming him against a car, constituted *de minimis* force.[60] The court concluded that this case was analogous to a line of

---

[57]    *J.W. v. Birmingham Board of Education* is illustrative of this distinction. While the officers' use of force against resistant, unhandcuffed students was considered reasonable, the court held that the use of incapacitating spray on handcuffed students or on non-resisting students was objectively unreasonable. *See id.* at 1147-48.

[58]    *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000); *see also Croom v. Balkwill*, 645 F.3d 1240, 1452 (11th Cir. 2011) (noting that the court "has long declined to entertain claims of excessive force predicated upon the use of *de minimus* force by law enforcement").

[59]    *See Gomez v. United States*, 601 F. App'x 841, 850 (11th Cir. 2015) (collecting cases in which force used on an unhandcuffed individual was deemed not excessive).

[60]    *Id.* at 850-51.

cases in which the court had found that the level of force used on unhandcuffed individuals was *de minimis*.[61] This was true even though the plaintiff was not even resisting the officer.[62] Here, not only was K.S. not handcuffed, but she was also actively resisting Jefferson's attempts to calm the situation and move K.S. to the office. Given these circumstances, the amount of force used was *de minimis*, and therefore cannot constitute excessive force as a matter of law.

Finally, the Court finds Hines's arguments unpersuasive. Hines argues that K.S.'s conduct was not threatening, and that Jefferson's force was so extreme that it resulted in neck injuries and behavioral changes to K.S. after this incident. Hines emphasizes that Jefferson did not observe K.S. engaging in a variety of dangerous actions. She points out that Jefferson did not see K.S. biting another person, holding a knife, holding a gun, or spitting on anyone.[63] However, even if K.S. did not engage in the types of dangerous conduct that Hines references, she nonetheless resisted Jefferson, a School Resource Officer, as she tried to end a physical altercation in which K.S. had been involved. K.S.'s attempts to break free from Jefferson's grasp made Jefferson's use of force reasonable under the circumstances, even if K.S. did not engage in some of the more dangerous types of conduct that Hines mentions.

---

[61] *Id.* at 851.

[62] *Id.*

[63] Pl.'s Br. in Opp'n to Def. Jefferson's Mot. for Summ. J., at 3-4.

Furthermore, even if Hines's claim did not fail on the merits, Jefferson would nonetheless be entitled to qualified immunity. Qualified immunity exempts an officer from section 1983 liability under certain circumstances.[64] To be entitled to qualified immunity in the Eleventh Circuit, an officer must show that she was acting within the scope of her discretionary authority at the time of the alleged wrongful acts.[65] Once the officer has proved that she was within the scope of her discretionary authority, the Plaintiff must show that the officer violated "clearly established statutory or constitutional rights of which a reasonable person would have known."[66] In order to establish that a reasonable officer would have known of a right, a plaintiff must show development of law in a "concrete and factually defined context" such that a reasonable officer would know that his conduct violated federal law.[67] Two questions are central to the qualified immunity defense. First, the Court must determine whether there was a violation of a constitutional right.[68] Second, the Court must then determine whether the right was clearly established.[69]

"In this circuit, the law can be 'clearly established' for qualified immunity

---

[64]    *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[65]    *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

[66]    *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[67]    *Jackson v. Sauls*, 206 F.3d 1156, 1164-65 (11th Cir. 2000).

[68]    *Hope v. Pelzer*, 536 U.S. 730, 736-42 (2002).

[69]    *Lee*, 284 F.3d at 1194.

purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."[70] "This inquiry is limited to the law at the time of the incident, as 'an official could not be reasonably expected to anticipate subsequent legal developments.'"[71] A constitutional right can be clearly established in three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law."[72] Since this excessive force standard establishes no bright line, "qualified immunity applies unless application of the standard would inevitably lead every reasonable officer in [Jefferson's] position to conclude the force was unlawful."[73] In the context of Fourth Amendment excessive force claims, "unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity."[74]

---

[70] *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997).

[71] *Shuford v. Conway*, 666 F. App'x 811, 817 (11th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[72] *Shuford*, 666 F. App'x at 817 (citing *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291-92 (11th Cir. 2009)).

[73] *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993).

[74] *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000).

Hines, admitting that there is no indistinguishable case law on point that declares Jefferson's conduct unconstitutional, argues that Jefferson's conduct was so obviously unconstitutional that she should have known it violated the Fourth Amendment.[75] "A narrow exception exists to the rule requiring particularized case law to establish clearly the law in excessive force cases."[76] "When an excessive force plaintiff shows 'that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw,' the official is not entitled to the defense of qualified immunity."[77] In using this method, Hines must show that Jefferson's actions would "inevitably lead every reasonable officer in [the defendant's] position to conclude the force was unlawful" to overcome qualified immunity.[78] She falls short of meeting this burden.

Hines argues that no reasonable officer could have believed that the force used by Jefferson against K.S. was legal, and therefore this exception applies. However, Jefferson's use of force does not reach this level. It was not so grossly disproportionate to the needs of the situation that any reasonable officer would

---

[75]    Pl.'s Br. in Opp'n to Def. Jefferson's Mot. for Summ. J., at 18.

[76]    *Priester*, 208 F.3d at 926.

[77]    *Id.* (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997)).

[78]    *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) (internal quotations omitted).

believe her actions were illegal. "To come within the narrow exception, a plaintiff must show that the official's conduct 'was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point.'"[79] Jefferson's actions, including choking K.S. and carrying her by her neck to the school office, are not so far beyond the border between excessive and acceptable force that every officer would know that it was unconstitutional. K.S. had just been involved in a fight, struggled with Coach Gousse as he intervened, and resisted Jefferson's efforts to end the altercation and move her to the office. Given these facts, the Court cannot conclude that every reasonable officer in Jefferson's position would have decided that the force used was excessive. The Eleventh Circuit's decision in *Post v. City of Fort Lauderdale* supports this conclusion. There, an officer applied a five second choke hold to the plaintiff, who was not resisting the officer.[80] The court concluded that this conduct was not plainly unconstitutional, and that "reasonable doubt" exists as to "whether this amount of force was unlawful." Likewise, Jefferson's use of a choke hold is not so plainly unlawful that every reasonable officer would know it violates the Constitution, especially given the fact that she was dealing with a combative subject. For these reasons, Jefferson is entitled to qualified immunity as to Hines's excessive force claim.

---

[79]     *Priester*, 208 F.3d at 926 (quoting *Smith*, 127 F.3d at 1419).

[80]     *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir. 1993).

## 2. Malicious Prosecution

Jefferson also moves for summary judgment as to Hines's malicious prosecution claim. The Eleventh Circuit has recognized malicious prosecution as a violation of the Fourth Amendment that can constitute the basis of a section 1983 claim.[81] "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution."[82] Courts in this circuit have looked to both federal and state law to determine the elements of a malicious prosecution claim. In *Uboh v. Reno*, the Eleventh Circuit "examined both federal law and Georgia law and indicated that, for purposes of a § 1983 malicious prosecution claim, the constituent elements of the common law tort of malicious prosecution included: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."[83]

Jefferson argues that these elements are not met because probable cause existed to arrest K.S. for these offenses. For probable cause to exist, "an arrest

---

[81]    *See Uboh v. Reno*, 141 F.3d 1000, 1002-04 (11th Cir. 1998).

[82]    *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003).

[83]    *Id.* at 881-82 (citing *Uboh*, 141 F.3d at 1004).

must be objectively reasonable based on the totality of the circumstances."[84]

"This standard is met when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"[85] "The probable cause inquiry is limited to 'the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later.'"[86] The Court agrees that Hines's malicious prosecution claim fails because probable cause existed as to the offenses charged.

K.S. was charged with Obstruction of an Officer and Disorderly Conduct. O.C.G.A. § 16-10-24(a) provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor."[87] Even when construing the facts in Hines's favor, the Court concludes that probable cause existed for Jefferson to believe that K.S. had committed the offense of misde-

_____

[84]    *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (citing *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)).

[85]    *Rankin*, 133 F.3d at 1435 (quoting *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995)).

[86]    *Davis v. Lang*, No. 1:15-CV-3017-SCJ, 2016 WL 10537012, at *3 (N.D. Ga. Dec. 7, 2016) (quoting *Jones v. Cannon*, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999)).

[87]    O.C.G.A. § 16-10-24(a).

meanor obstruction. It is undisputed that K.S. was uncooperative and resistant when Jefferson approached her. K.S. admits that she resisted Jefferson as she was carried to the school office, and that she was trying to physically break free from her grasp. She continued to struggle after Jefferson told her that she was resisting arrest. This conduct created probable cause to believe that K.S. committed obstruction of an officer. Jefferson was lawfully investigating the school disturbance created by K.S. and D.B.'s fight. K.S.'s conduct interfered with this performance of her duty, and "that by resisting [Deputy Jefferson] as she performed those duties, [K.S.] obstructed or hindered" Jefferson and Deputy Smith's ability to perform their duties.[88] Similarly, in *In re C.R.*, the Georgia Court of Appeals concluded that probable cause to arrest a child for obstruction of an officer existed when that child resisted an officer's discharge of a DFACS pick-up order.[89] Other Georgia case law supports this conclusion.[90]

---

[88]      *Haygood v. State*, 338 Ga. App. 189, 193 (2016).

[89]      *See In re C.R.*, 294 Ga. App. 164, 166 (2008) ("The officer was engaged in the discharge of the pick-up order, which C.R. resisted, thus providing probable cause for her arrest for obstruction.").

[90]      *See, e.g.*, *Edwards v. State*, 308 Ga. App. 569, 569-71 (2011) (concluding that sufficient evidence existed to support conviction for misdemeanor obstruction when defendant refused to provide his drivers' license to officers, assumed a physically aggressive stance, and refused to comply with officers' commands to stop resisting and fighting); *Lord v. State*, 276 Ga. App. 209 (2005) (finding the evidence sufficient to sustain obstruction conviction where defendant cursed at officers, refused to stand up when told to do so, and physically resisted officers as they arrested her); *Thompson v. State*, 259 Ga. App. 518, 520 (2003) (upholding obstruction conviction where defendant became violent, cursed at officers, beat on police car's divider, and assaulted an officer).

Similarly, probable cause existed for charging K.S. for disorderly conduct.

O.C.G.A. § 16-11-39(a) provides that:

> (a) A person commits the offense of disorderly conduct when such person commits any of the following:
>> (1) Acts in a violent or tumultuous manner toward another person whereby such person is placed in reasonable fear of the safety of such person's life, limb, or health;
>> (2) Acts in a violent or tumultuous manner toward another person whereby the property of such person is placed in danger of being damaged or destroyed;
>> (3) Without provocation, uses to or of another person in such other person's presence, opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace, that is to say, words which as a matter of common knowledge and under ordinary circumstances will, when used to or of another person in such other person's presence, naturally tend to provoke violent resentment, that is, words commonly called "fighting words"; or
>> (4) Without provocation, uses obscene and vulgar or profane language in the presence of or by telephone to a person under the age of 14 years which threatens an immediate breach of the peace.[91]

K.S. does not dispute that she engaged in a physical altercation with D.B.[92] She admits that she punched D.B. in the face after D.B. hit her. K.S. and D.B. then continued to wrestle on the floor.[93] Then, after Gousse and Tolbert separated D.B. and K.S., K.S. struggled with Gousse as he tried to hold her on the floor.[94] She then physically struggled with Jefferson. K.S. acted in a "violent or

---

[91]    O.C.G.A. § 16-11-39(a).

[92]    Pl.'s Response to Def. Jefferson's Statement of Material Facts ¶ 3.

[93]    *Id.*

[94]    *Id.* ¶ 19.

tumultuous manner" towards D.B., Jefferson, the school officials, and the other students around her and placed them in reasonable fear of physical injury. These circumstances created probable cause to believe that K.S. had committed the offense of disorderly conduct.[95] Therefore, Hines's malicious prosecution claim fails as to this offense.

Furthermore, the fact that the District Attorney dismissed the charges against K.S. does not change this conclusion. Although the District Attorney concluded that the evidence may not have been strong enough to prove this case beyond a reasonable doubt, she stated that probable cause did exist to believe that K.S. committed both of these offenses. And, as explained above, probable cause did in fact exist to believe that K.S. violated these statutes. Whether the State can prove beyond a reasonable doubt that K.S. committed these offenses is not relevant to this inquiry. Since probable cause existed, Jefferson did not commit the tort of malicious prosecution.

Finally, Hines also asserts a claim for malicious prosecution under the Fourteenth Amendment.[96] However, she has pointed to no authority identifying

---

[95]     *See, e.g.*, *Haygood*, 338 Ga. App. at 191-92 (concluding that evidence was sufficient to support disorderly conduct conviction where victims stated they felt unsafe because of defendant and defendant acted in a violent manner by using threatening language towards the victims and wielding a knife); *Crutcher v. State*, 267 Ga. App. 410, 412 (2004) (upholding disorderly conduct conviction where defendant cursed at victims, violently shook his keys, and damaged victim's car).

[96]     Pl.'s Br. in Opp'n to Def. Jefferson's Mot. for Summ. J., at 16-17.

this is a viable claim. The Eleventh Circuit precedent discussed above identifies malicious prosecution as a claim cognizable under the Fourth Amendment, not the Fourteenth Amendment. The cases that Hines relies upon deal with challenges to *convictions* under the Due Process Clause of the Fourteenth Amendment, which is entirely distinct from a claim for malicious prosecution.[97] Therefore, Jefferson is also entitled to summary judgment as to Count II.

### B. Defendant Newton County School District

Next, the Newton County School District moves for summary judgment. Hines asserts one claim against the School District. The Amended Complaint is not entirely clear as to what Hines's specific theory of recovery is against the School District. Count IV is labeled as a claim under 42 U.S.C. § 1983 and the Fourth Amendment against the School District. However, in her briefs, Hines contends that she is asserting a claim for excessive corporal punishment under the Fourteenth Amendment. The Court therefore will construe this as a claim under the Fourteenth Amendment and section 1983 for excessive corporal punishment. The Court concludes that the School District is entitled to summary judgment as to this claim for two reasons. First, Hines's excessive

---

[97] *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979) ("[T]he due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."); *Thompson v. City of Louisville*, 362 U.S. 199, 205-06 (1960) (finding that the defendant's conviction violated due process since no evidence supported his conviction).

corporal punishment argument fails on the merits. Second, Hines fails to establish the essential elements of *Monell* municipal liability under section 1983.

First, Hines has failed to show that K.S. suffered a constitutional deprivation. In her brief, Hines argues that the School District's failure to train its employees resulted in a violation of K.S.'s Fourteenth Amendment right to be free from excessive corporal punishment. The Supreme Court has explained that "corporal punishment in public schools implicates a constitutionally protected liberty interest."[98] "The Due Process Clause protects individuals against arbitrary exercises of government power, but only the most egregious official conduct can be said to be arbitrary in the constitutional sense."[99] To meet such a level, the abuse of power must shock the conscience.[100] This is because "[t]he Due Process Clause does not 'impos[e] liability whenever someone cloaked with state authority causes harm.'"[101] The Fourteenth Amendment is not a "font of tort law" that can be used to turn state law tort claims into federal causes of action.[102] Nonetheless, "excessive corporal punishment, at least where not

---

[98]    *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).

[99]    *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty.*, 610 F.3d 588, 598 (11th Cir. 2010) (internal quotations omitted).

[100]    *Id.*

[101]    *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).

[102]    *Id.*

administered in conformity with a valid school policy authorizing corporal punishment as in *Ingraham*, may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior."[103] Therefore, if Jefferson subjected K.S. to corporal punishment, and that corporal punishment constituted conscience-shocking conduct, then Hines may have a valid claim under the Due Process Clause.

However, Hines has failed to show that Jefferson's actions constituted corporal punishment at all. "In cases involving a physical injury inflicted upon a student, the Eleventh Circuit has stated that the first inquiry is to determine whether the school official's conduct constitutes corporal punishment."[104] "While the Eleventh Circuit has not precisely defined 'corporal punishment,' it noted that '[t]he touchstone of corporal punishment in schools appears to be the application of physical force by a teacher to punish a student for some kind of school-related misconduct.'"[105] "The key inquiry is not what form the use of force takes but whether the use of force is 'related to the student's misconduct at school and for the purpose of discipline.'"[106] Even when construing the facts in

---

[103]     *Neal v. Fulton Cty. Bd. of Educ.*, 229 F.3d 1069, 1075 (11th Cir. 2000).

[104]     *Atlanta Indep. Sch. Sys. v. S.F. ex rel. M.F.*, 740 F. Supp. 2d 1335, 1352 (N.D. Ga. 2010) (citing *Neal*, 229 F.3d at 1072).

[105]     *Id.* (quoting *Neal*, 229 F.3d at 1072).

[106]     *T.W.*, 610 F.3d at 599-600 (quoting *Neal*, 229 F.3d at 1073) (internal alterations omitted).

Hines's favor, Jefferson's use of force against K.S. does not constitute corporal punishment. It is undisputed that K.S. and D.B. were engaged in a fight. Gousse and Tolbert attempted to break up the fight, and Jefferson and Deputy Smith then provided assistance. Jefferson used force against K.S. to restore order to the school and de-escalate the situation by separating the students.[107] There is no indication from the record that Jefferson applied this force in an effort to punish or discipline K.S. The evidence instead indicates that Jefferson was acting in law enforcement capacity to try to calm this situation, not as a school official disciplining K.S. for misbehaving. Therefore, since Hines has failed to show that Jefferson's application of force was a form of corporal punishment, this claim fails.

Second, even if Hines were able to show that K.S. experienced a constitutional deprivation, she has also failed to show that the School District can be held liable for it under section 1983. "The Supreme Court has placed strict limitations on municipal liability under section 1983."[108] A local government may not be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory.[109] Instead, a county will be liable only if the plaintiff can establish that

---

[107]     *Neal*, 229 F.3d at 1072 ("This case is not one where a teacher used reasonable force to restore order in the face of a school disturbance and merely shoved or grabbed fighting students to separate them.").

[108]     *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

[109]     *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

an official custom or policy of the county was the "moving force" behind the deprivation of a constitutional right.[110] Consequently, to succeed on a section 1983 claim against a county, a plaintiff must demonstrate that a constitutional deprivation occurred: (1) pursuant to an officially promulgated policy; (2) as the result of a decision made by an official with final policymaking authority for the county; or (3) as a result of actions taken pursuant to "custom or usage" with the force of law.[111] Proof of a single isolated incident of unconstitutional activity generally is insufficient to impose municipal liability under *Monell*.[112]

Hines argues that the School District's failure to train its employees caused K.S.'s constitutional injuries. Under "limited circumstances," a municipality may be held liable for the actions of its employees based on an allegation of failure to train or supervise.[113] A municipality may be liable based upon a "failure to train or supervise" theory "only where [1] the municipality inadequately trains or supervises its employees, [2] this failure to train or supervise is a city policy, and [3] that city policy causes the employees to violate

---

[110]    *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *Grech*, 335 F.3d at 1330.

[111]    *Monell*, 436 U.S. at 690-91.

[112]    *Monell*, 436 U.S. at 694; *see also Anderson v. City of Atlanta*, 778 F.2d 678, 685 (11th Cir. 1985).

[113]    *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)).

a citizen's constitutional rights."[114] A plaintiff "may prove a city policy by showing that the municipality's failure to train evidences a 'deliberate indifference' to the rights of its inhabitants."[115] To "establish . . . such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action."[116] A plaintiff may accomplish this by submitting "evidence of a history of widespread prior abuse by . . . personnel that would have put the [defendant] on notice of the need for improved training or supervision."[117] The fact that an individual officer may be unsatisfactorily trained is insufficient to establish municipal liability.[118] Rather, the focus is on the adequacy of the training program.[119] Thus, the School District is not automatically liable under section 1983 even if it inadequately trained its

---

[114]    *Gold*, 151 F.3d at 1350.

[115]    *Id.*; *see also City of Canton*, 489 U.S. at 389 (Where "a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants . . . such a shortcoming [may] be properly thought of as a city 'policy or custom' that is actionable under § 1983."); *Cannon v. Taylor*, 782 F.2d 947, 951 (11th Cir. 1986) ("[F]ederal courts may impose section 1983 municipal liability for a 'policy' of failure to take remedial steps to correct constitutionally offensive acts by municipal employees . . . [when] the failure to take remedial steps . . . amount[s] to deliberate indifference or tacit authorization of the offensive acts.").

[116]    *Gold*, 151 F.3d at 1350.

[117]    *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990).

[118]    *City of Canton*, 489 U.S. at 390-91.

[119]    *Id.* at 388-91.

School Resource Officers and those officers violated K.S.'s constitutional rights. Instead, the "limited circumstances" under which a failure to train can be the basis for section 1983 liability "occur only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights."[120]

Hines has failed to meet this standard. At most, Hines has shown that the School District failed to adequately train Jefferson. This single failure is not enough to impose liability upon the School District under section 1983. Hines has failed to show that the School District exhibited a deliberate indifference to the rights of its students. She has not pointed to a history of widespread abuse by the School District's personnel that would have put it on notice of the need to improve its training or supervision, nor provided any other evidence that the School District knew it needed to train its School Resource Officers in this area and made the deliberate choice to not do so. Based on the evidence offered by Hines, the School District cannot be held liable for failure to train under section 1983.[121]

---

[120]     *Gold*, 151 F.3d at 1350.

[121]     The parties also dispute whether Jefferson was an employee of the School District, and whether the School District had a duty to train her and the other School Resource Officers. The School District has a colorable argument that Jefferson was not its employee. *See State v. Scott*, 279 Ga. App. 52, 55 (2006) ("[A] police officer assigned to work at a school as a school resource officer should be considered a law enforcement officer, not a school official."). However,

Hines also argues that the School District's contract with the Newton Country Sheriff's Office providing for the placement of Sheriff's Deputies at its schools as School Resource Officers constitutes a policy that violated K.S.'s constitutional rights. According to Hines, this contract violated various Georgia constitutional and statutory provisions, and thus resulted in K.S.'s injuries. However, the Court finds these arguments unpersuasive. First, Hines has failed to demonstrate that the contract actually violates these provisions of Georgia law. Second, even if the contract were to violate these laws, she has failed to show how this purported "policy," or its violation of Georgia law, resulted in the specific constitutional injuries that K.S. alleges.

First, Hines has not shown how the school's contract with the Sheriff's Office violated the cited state law provisions. Hines argues that the contract violates Article VIII, Section V, Paragraph II of the Georgia Constitution.[122] That portion of the Georgia Constitution provides:

> Boards of education. Each school system shall be under the management and control of a board of education, the members of which shall be elected as provided by law. School board members

---

the Court need not resolve this dispute. Even assuming that Jefferson was an employee of the School District, and that the School District had a duty to train her, Hines's claim still fails because she has not shown that the School District had a *policy* of inadequately training its employees.

[122]     In her brief, Hines argues that the contract violates Article VII, Section V, Paragraph II. Pl.'s Br. in Opp'n to School District's Mot. for Summ. J., at 10. However, such a provision does not exist in the Georgia Constitution. The Court assumes that this is a typographical error, and that Hines intended to refer to Article VIII, Section V, Paragraph II.

shall reside within the territory embraced by the school system and shall have such compensation and additional qualifications as may be provided by law. Any board of education to which the members are appointed as of December 31, 1992, shall continue as an appointed board of education through December 31, 1993, and the appointed members of such board of education who are in office on December 31, 1992, shall continue in office as members of such appointed board until December 31, 1993, on which date the terms of office of all appointed members shall end.[123]

However, this provision only states that local boards of education should manage and control the school systems of the state. Hines has not explained how the School District's decision to contract with the Sheriff's Office to provide security for the school violates this constitutional provision.[124] Hines also contends that the contract violates O.C.G.A. § 20-2-1183, which provides that a local school board must have a "collaborative written agreement" with law enforcement officials when it assigns law enforcement officers in its schools to establish the roles of the school employees and law enforcement personnel.[125]

---

[123]     GA. CONST. art. VIII, § V, para. II.

[124]     Hines seems to argue that this constitutional provision prohibits local school boards from delegating educational policymaking authority. Even if this provision prohibits school boards from delegating policymaking authority, as Hines asserts, the School District's decision would still not violate this provision. Working with the Sheriff's Office to provide deputies as School Resources Officers does not constitute a delegation of education policymaking.

[125]     Specifically, O.C.G.A. § 20-2-1183 provides "When a local school system assigns or employs law enforcement officers in schools, the local board of education shall have a collaborative written agreement with law enforcement officials to establish the role of law enforcement and school employees in school disciplinary matters and ensure coordination and cooperation among officials, agencies, and programs involved in school discipline and public protection." *See* O.C.G.A. § 20-2-1183.

However, Hines once again fails to explain how the School District violated this statute. The contract provides for the roles of the School District's employees and the School Resource Officers.[126] This *is* the type of written, collaborative agreement that this statute envisions.

Second, and more importantly, Hines fails to explain how a violation of these Georgia laws caused K.S.'s purported injury under the Fourteenth Amendment. Hines repeatedly states, in conclusory terms, that the School District's "deliberate choice" to not follow these Georgia constitutional and statutory laws caused Jefferson's improper training and thus resulted in K.S.'s injuries. However, nowhere in her briefs does Hines explain how the School District's agreement to place Newton County Sheriff's Office deputies in the schools as School Resource Officers resulted in the inadequate training of Jefferson and other officers. Therefore, even if this contract could constitute a county "policy," and even if that policy violated these Georgia laws, Hines has failed to show that it caused K.S.'s alleged constitutional injuries. Since Hines bears the burden of proof on her section 1983 claims, she must provide more than conclusory arguments to establish that a county policy or custom caused K.S.'s injuries.

## IV. Conclusion

For the reasons stated above, the Defendant Felicia Jefferson's Motion for

---

[126] Fuhrey Aff., Ex. 1 [Doc. 56-2].

Summary Judgment [Doc. 48] is GRANTED and the Defendant Newton County

School District's Motion for Summary Judgment [Doc. 56] is GRANTED.

SO ORDERED, this 5 day of September, 2018.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge